**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JAMES MANIS,

      Plaintiff,

v.

GENERAL MOTORS, LLC; V2X, INC.;
LANCESOFT, INC.; and ICONMA, L.L.C.,

      Defendants.

Case No. _____

Hon. _____

**JURY TRIAL DEMANDED**

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff James Manis, by and through his attorney, Morgan & Morgan PC, for his Complaint against Defendants General Motors, LLC ("GM"); V2X, Inc. ("V2X"); LanceSoft, Inc. ("LanceSoft"); and ICONMA, L.L.C. ("ICONMA") states as follows:

**INTRODUCTION**

1. This is an action for sexual harassment, discrimination, and retaliation in employment brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and Michigan's Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq. ("ELCRA").

2. Plaintiff James Manis is a bisexual man and a skilled automotive professional.

3. Twice within five months, Plaintiff was placed to work at General Motors facilities in southeast Michigan through staffing arrangements — first through LanceSoft in connection with a V2X services contract, and later through ICONMA.

4. Twice, when his LGBT identity became known in the workplace, he was subjected to harassment because of his sex and sexual orientation.

5. Twice, he promptly reported the harassment through the channels his employers provided.

1

6.   And twice, shortly after his protected complaints, his assignment was terminated while the harassers kept their jobs.

7.   During the second placement, the harassment escalated from demeaning comments about Plaintiff's sex and sexual orientation to statements Plaintiff reasonably understood as threats of physical violence, including a coworker's statement, "who's going to kill him," and, after Plaintiff filed a complaint with the Michigan Department of Civil Rights ("MDCR"), a statement made while pointing at Plaintiff that included the words "hit him over the head with a hammer" and "and snap."

8.   Approximately five hours after Plaintiff reported that second threat in writing to GM's Employee Relations investigator and GM's Chief Executive Officer, GM directed that Plaintiff's assignment be "paused" effective immediately, and Plaintiff was instructed to gather his belongings and leave the facility. His assignment was then terminated.

9.   Plaintiff created a contemporaneous written record of the harassment as it occurred, and reported it in writing to GM management, GM Human Resources and Employee Relations, and his staffing employers.

10.   Defendants nevertheless failed to take prompt and effective remedial action and instead ended Plaintiff's employment.

11.   Plaintiff seeks back pay, front pay, compensatory and exemplary damages, punitive damages under federal law, interest, attorney fees and costs, and equitable relief.

## JURISDICTION AND VENUE

12.   This Court has subject-matter jurisdiction over Plaintiff's Title VII claims under 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5(f)(3).

2

13. This Court has supplemental jurisdiction over Plaintiff's ELCRA claims under 28 U.S.C. § 1367(a) because those claims are so related to the federal claims that they form part of the same case or controversy.

14. Venue is proper in this District under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged herein were committed in Wayne County and Oakland County, Michigan, within this District; because employment records relevant to those practices are maintained and administered in this District; and because Plaintiff would have continued to work in this District but for the unlawful practices alleged.

## PARTIES

15. Plaintiff James Manis is an adult resident of Detroit, Wayne County, Michigan. At all relevant times, Plaintiff was an "employee" within the meaning of Title VII, 42 U.S.C. § 2000e(f), and ELCRA, MCL 37.2201(a).

16. Defendant General Motors, LLC is a Delaware limited liability company with its principal place of business at 300 Renaissance Center, Detroit, Michigan 48265.

17. At all relevant times, GM employed more than 500 persons and was an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b), and ELCRA, MCL 37.2201(a).

18. Defendant V2X, Inc. is a corporation with offices at 7901 Jones Branch Drive, Suite 700, McLean, Virginia 22102, which at all relevant times did business in Michigan, including in connection with vehicle-repair services performed at GM's Factory facility in Detroit, Michigan.

19. At all relevant times, V2X employed approximately 500 or more persons and was an "employer" within the meaning of Title VII and ELCRA.

20. Defendant LanceSoft, Inc. is a staffing company with offices at 2121 Cooperative Way, Suite 130, Herndon, Virginia 20171, which at all relevant times did business in Michigan.

3

At all relevant times, LanceSoft employed approximately 500 or more persons and was an "employer" within the meaning of Title VII and ELCRA, and was also an "employment agency" within the meaning of 42 U.S.C. §§ 2000e(c) and 2000e-2(b) and MCL 37.2201(b) and 37.2203, in that it regularly undertook to procure employees for employers, including GM and V2X.

21. Defendant ICONMA, L.L.C. is a Michigan limited liability company headquartered in Troy, Oakland County, Michigan.

22. At all relevant times, ICONMA was Plaintiff's W-2 staffing employer for his placement at GM, was an "employer" within the meaning of Title VII and ELCRA, and was also an "employment agency" within the meaning of 42 U.S.C. §§ 2000e(c) and 2000e-2(b) and MCL 37.2201(b) and 37.2203.

## ADMINISTRATIVE EXHAUSTION

23. Plaintiff timely initiated charges of discrimination with the MDCR, dual-filed with the U.S. Equal Employment Opportunity Commission ("EEOC"), within the statutorily required time frame.

24. MDCR No. 653147 (James Manis v LanceSoft, Inc.), alleging sex and sexual-orientation discrimination and retaliation, including his October 14, 2024 discharge, dual-filed with the EEOC.

25. MDCR No. 654486 / EEOC Charge No. 23A-2025-00704 (James Manis v V2X, Inc.), alleging sexual harassment, sex and sexual-orientation discrimination, and retaliation, including the October 14, 2024 termination of his assignment.

26. MDCR No. 654772 / EEOC Charge No. 23A-2025-00774 (James Manis v General Motors, LLC), arising from the October 2024 events at GM's Factory ZERO facility. On or about

4

January 27–30, 2026, Plaintiff requested withdrawal of the MDCR complaint in order to pursue this matter in court and requested an EEOC Notice of Right to Sue.

27.     MDCR No. 654810 (James Manis v General Motors), arising from the December 2024 – February 2025 events at GM's Clawson facility, dual-filed with the EEOC on or about February 2025.

28.     The EEOC issued Notices of Right to Sue with respect to the foregoing charges on April 9, 2026, and May 11, 2026.

29.     This action is filed within 90 days of Plaintiff's receipt of those Notices.

30.     ICONMA had actual notice of Plaintiff's administrative charges and of the allegations underlying them, participated in the events at issue through its Contractor Relations personnel—including through Contractor Relations Manager Stephanie Reese's January 24, 2025 acknowledgment of Plaintiff's harassment report and its representatives' participation in, and receipt of, Plaintiff's reports to GM's investigators—and shares an identity of interest with GM with respect to Plaintiff's placement, such that Plaintiff's charges exhausted his claims against ICONMA.

31.     In any event, no administrative exhaustion is required for Plaintiff's ELCRA claims.

## JOINT-EMPLOYER AND AGENCY ALLEGATIONS

32.     At all relevant times, Plaintiff worked at GM facilities, on GM premises, subject to GM badge access and GM security, using GM equipment, systems, and email, performing work integral to GM's operations, alongside and under the direction of GM personnel.

33.     With respect to Plaintiff's first placement (October 2024): LanceSoft hired Plaintiff, set and paid his wages, and carried him on its payroll (including for unemployment-

5

insurance purposes); V2X, pursuant to its services contract, directed and supervised the day-to-day performance of Plaintiff's work through, among others, a V2X team lead; and GM owned and controlled the worksite, controlled the conditions of Plaintiff's employment, and, through its personnel and its "purchased services" management, had and exercised the ability to require Plaintiff's removal from the assignment.

34.     GM, V2X, and LanceSoft shared and codetermined the essential terms and conditions of Plaintiff's employment, including supervision, discipline, and termination.

35.     With respect to Plaintiff's second placement (December 2024 – February 2025): ICONMA hired Plaintiff, set and paid his wages, administered his onboarding and contractor relations, and required his participation in ICONMA processes; and GM controlled the worksite, assigned and supervised Plaintiff's daily work through GM supervisor Jason Smith, issued Plaintiff a GM email account and badge, investigated Plaintiff's harassment complaints through its own Employee Relations function, and directed the immediate "pause" and subsequent termination of Plaintiff's assignment. GM and ICONMA shared and codetermined the essential terms and conditions of Plaintiff's employment, including supervision, discipline, and termination.

36.     Under the economic-reality and joint-employer standards applicable to Title VII and ELCRA, GM, V2X, and LanceSoft were Plaintiff's joint employers during the first placement, and GM and ICONMA were Plaintiff's joint employers during the second placement.

37.     In addition and in the alternative, LanceSoft and ICONMA are liable as employment agencies under 42 U.S.C. § 2000e-2(b) and MCL 37.2203 for discriminating against Plaintiff, and for failing or refusing to refer or continue to refer him for employment, because of

his sex and sexual orientation and in retaliation for protected activity, and GM and V2X are liable for discrimination they caused or ratified with respect to a worker placed with them.

## FACTUAL ALLEGATIONS

### A.      The First Placement: LanceSoft/V2X at GM's Factory ZERO (October 2024)

38.     In or around September/October 2024, LanceSoft hired Plaintiff as a Vehicle Repair Subject Matter Expert and placed him, in connection with a V2X services contract, at GM's Factory ZERO facility on East Grand Boulevard in Detroit, Michigan. Plaintiff's day-to-day work was supervised by a V2X team lead, and Plaintiff worked alongside GM employees.

39.     Beginning on or about October 7, 2024, after Plaintiff's LGBT status became known at the facility, GM employees — including employees identified in Plaintiff's MDCR filings as Shawn Baer and Joseph Shelto began harassing Plaintiff because of his sex and sexual orientation.

40.     On or about October 7, 2024, Plaintiff opposed the harassment, thereby engaging in protected activity.

41.     On or about October 12, 2024, Plaintiff was subjected to comments of a sexual nature by a representative of the companies for which he was working. Plaintiff complained about the sexual comments to management that same day.

42.     Nothing was done. That same day, LanceSoft's representative ceased communicating with Plaintiff.

43. Two days later, on October 14, 2024, Plaintiff's contract and assignment were terminated. Plaintiff was told, in substance, that the termination followed his harassment complaint concerning GM "purchased services" personnel.

44. The termination was communicated by a plant purchased-services manager .

45. The GM employees who harassed Plaintiff were not terminated or, on information and belief, otherwise meaningfully disciplined.

46. LanceSoft reported Plaintiff's separation date as October 14, 2024. On December 16, 2024, the Indiana Department of Workforce Development determined that Plaintiff "was not discharged for just cause," that LanceSoft had "failed to provide sufficient information to establish the discharge was the result of willful misconduct," and that no disqualification applied to Plaintiff's unemployment claim.

**B.      *The Second Placement: ICONMA at GM's Clawson Facility (December 2024 – February 2025)***

47. On or about December 4, 2024, ICONMA hired Plaintiff and placed him at a GM facility on North Crooks Road in Clawson, Michigan (the "Clawson Facility"), where Plaintiff performed labor-time study work supporting GM's service operations.

48. Plaintiff was issued a GM email address (james.m.manis@gm.com) and GM badge access, and his immediate supervisor was GM employee Jason Smith.

49. Plaintiff's ICONMA Contractor Relations Specialist was Joseph Nieman, and ICONMA's Contractor Relations Manager was Stephanie Reese.

50.	On his first day, December 4, 2024, during a drive to a GM technical campus to obtain his identification badge, coworker Ralph Gallo—a lead Labor Time Technician staffed at GM through Populus Group—told Plaintiff that, whenever a new person is hired, he reviews the new hire's Facebook profile "to see what's up."

51.	Plaintiff's public Facebook profile picture showed him in front of an all-gender restroom at an LGBT venue with a bisexual pride keychain visible.

52.	Plaintiff's LGBT status thereby became known, or was reasonably likely to have become known, to personnel at the Clawson Facility.

53.	On December 5, 2024, at a holiday gathering held at the Clawson Facility, Plaintiff was seated with coworkers Zane Herr and Austin Staller (both staffed at GM through Populus Group) and GM Labor Time Technician Jason Morin. A woman whose identification badge displayed a rainbow sticker was seated at an adjacent table. Referring to that woman and to Plaintiff, Herr said, "I think James likes that," and Morin added, "I don't know, for some reason he keeps looking at me." Plaintiff understood these remarks to mock him because of his sexual orientation.

54.	On December 9, 2024, at supervisor Jason Smith's direction, Plaintiff introduced himself at a team meeting and mentioned, among other things, that he had volunteered at Affirmations, an LGBTQ+ community center.

55.	Plaintiff noticed a shift in the room after that disclosure.

56.	Immediately after the meeting, coworkers congregated near Plaintiff's desk; Plaintiff heard the word "sex" from one group, and heard coworker Zane Herr say, among other

9

things, "from what I just heard now I know he's gone" and "he's going to be feeling like his life is over again by Monday."

57.    On December 10, 2024, Plaintiff heard Herr say "I didn't see an adam's apple."

58.    Plaintiff, while speaking with coworkers, heard Herr say "why don't they just fire him already," and heard coworker Trevor say, while looking at Plaintiff, "if he's smart he'll keep his mouth shut."

59.    On December 11, 2024, Plaintiff heard Herr ask coworker Austin, "how long do you think until they fire him," and heard Austin reply, "I give it 7 months." Herr responded, "I'm going to take the over on that."

60.    Later that morning, at approximately 11:28 a.m. on December 11, 2024, Plaintiff reported the developing harassment to his GM supervisor, Jason Smith. Smith told Plaintiff, in substance, that if it bothered him he should contact his contracting house, that Smith had not heard anything, and that Plaintiff should not worry about it.

61.    On information and belief, neither Smith nor GM took any prompt corrective action in response to this report.

62.    On December 13, 2024, Plaintiff observed a group of coworkers, including Austin, conspicuously discussing firearms near him, with Austin listing the guns he owned, which Plaintiff reasonably perceived as intended to intimidate him; Plaintiff also heard a coworker say "let's catch him."

10

63.     Thereafter, Plaintiff was further socially ostracized at the facility.

64.     The harassment continued through December 2024 and January 2025. On January 3, 2025, Austin said, while looking at Plaintiff, "no eye contact, you know what's up." The same day, Herr, discussing a family member, said "now she's dating girls" and "I'm the normal one," and when Plaintiff asked what was wrong with her dating girls, Herr declined to answer.

65.     On or about January 4, 2025, Plaintiff heard Herr, again referring to his own relative, remark "no girls, back to square one," further disparaging same-sex relationships within Plaintiff's hearing.

66.     On January 23, 2025, Plaintiff heard Austin say, while Austin and Herr were talking and looking at Plaintiff, "who's going to kill him." Plaintiff reasonably understood that the harassment had escalated into a threat of violence (the "First Threat").

67.     Plaintiff promptly reported. On January 23, 2025, Plaintiff described the harassment to coworker Ralph Gallo, showed Gallo his contemporaneous written record, and stated that he was prepared to escalate the matter to GM Human Resources up to GM's Chief Executive Officer.

68.     On January 24, 2025, Plaintiff reported the intimidating comments to a GM manager ("Dan") and asked only that the conduct stop.

69.     On January 24, 2025, in a written response to ICONMA's mandatory contractor survey sent to Contractor Relations Manager Stephanie Reese, Plaintiff disclosed to ICONMA that he was working to resolve "a conflict with other employees related to my LGBT+ status and harassing behavior." That same day, Reese replied in writing that she was "very sorry to learn of

11

the issue [Plaintiff was] having at work" and would "connect with Joe"—ICONMA Contractor Relations Specialist Joseph Nieman—about the matter, thereby acknowledging ICONMA's notice of Plaintiff's report of sexual-orientation harassment.

70. On January 27, 2025, Plaintiff texted ICONMA Contractor Relations Specialist Joseph Nieman asking that the behavior stop.

71. By January 28, 2025, Plaintiff had completed ICONMA's formal harassment-complaint form.

72. On January 28, 2025, after supervisor Jason Smith asked Plaintiff whether he had heard anything about the harassment complaint and Plaintiff confirmed that he had completed ICONMA's form, Herr and Austin repeatedly said to Plaintiff "now you fucked up."

73. On January 29, 2025, Michael Upson of GM's Corporate Employee Relations Investigation Group contacted Plaintiff by email, stating that he had "been assigned a concern reported on your behalf," and scheduled an investigative interview.

74. Iconma and GM personnel Nicole, Alyssa Bitell and Le'Ann Steele were copied on the scheduling correspondence.

75. The interview took place by Microsoft Teams on January 31, 2025, at 8:00 a.m.

76. The harassment continued during and after GM's investigation.

77. On February 4, 2025, Plaintiff heard Herr say "at least I'm not gay." On February 11, 2025, Plaintiff heard Austin say that he and the other harassers "ruined [Plaintiff's] career."

78.     On February 18, 2025, Plaintiff heard Austin Staller, speaking angrily, say that he had tried to "set [Plaintiff] up with a trans-woman," and ask "does he think it will be different anywhere else," to which Herr replied, "we did it too much." The same day, Plaintiff heard Trevor Buswell say, in reference to Plaintiff, "he's got to get that lawyer ready."

79.     On February 19, 2025, the MDCR telephoned Plaintiff at work concerning his civil-rights complaint; coworker Austin lingered nearby, attempting to listen to the call.

80.     On February 20, 2025, Upson informed Plaintiff in writing that GM's investigation "has concluded," that GM "considers investigations to be confidential which includes any actions taken as a result of the investigation," and that he could "not share any further information," while asserting that GM had "addressed the matter consistently with its policies and practices."

81.     GM took no action against any harasser, and the harassment continued unabated during and after GM's investigation.

82.     On February 21, 2025, at 8:41 a.m., Plaintiff emailed Upson, copying ICONMA and GM Human Resources personnel, stating that "[t]he harassing behavior has continued and so clearly the issue has not been adequately addressed," itemizing the February 4, 11, and 18 incidents, informing GM that he had "now filed a complaint against General Motors with the Michigan Department of Civil Rights," and expressly reminding GM of its non-retaliation policy and of Michigan's non-retaliation laws.

83.     Later that same day, at approximately 1:49 p.m. on February 21, 2025, coworker Svonne Daughtrey walked up to Zane Herr and pointed at Plaintiff.

13

84. Plaintiff heard one of the two men—Daughtrey or Herr, who were then conversing and gesturing toward Plaintiff—state "hit him over the head with a hammer" and "and snap!" (the "Second Threat").

85. Earlier that day, Plaintiff had heard Daughtrey say, "he filed a complaint with the Michigan Department of Civil Rights" — a fact Plaintiff had not disclosed to any coworker.

86. On Monday, February 24, 2025, at 6:52 a.m., Plaintiff reported the Second Threat by email to Upson, copying Nicole (ICONMA), GM personnel Le'Ann Steele and Alyssa Bitell, and GM Chief Executive Officer Mary Barra, under the subject line "A second threat of violence has been made," identifying Daughtrey and Herr by name.

87. Minutes later, at 6:59 a.m. on February 24, 2025, Plaintiff submitted his weekly work report to GM supervisor Jason Smith, stating: "I ask for your understanding in my poor performance this week as I have found it difficult to focus on work due to the increasingly hostile work environment." Plaintiff thereby placed GM on contemporaneous written notice that any decline in his work output was caused by the unremediated harassment, and not the reverse.

88. That same morning, at approximately 9:58 a.m., Plaintiff heard Herr and Austin repeatedly say "bye" and heard Austin say "I hope you find your gun," suggesting Plaintiff should harm himself.

89. Plaintiff also overheard supervisor Jason Smith say "I'll have to be careful about how I do it."

14

90.     At 10:09 a.m., Plaintiff reported these additional comments by email to Upson, again copying Nicole, Steele, Bitell, and Barra, and identifying Matthew Fennig and Trevor Buswell as having been present within earshot.

91.     At approximately 11:57 a.m. on February 24, 2025 — roughly five hours after Plaintiff reported the Second Threat to GM's Employee Relations investigator and GM's Chief Executive Officer — ICONMA's Joseph Nieman notified Plaintiff via Microsoft Teams that GM had directed that Plaintiff's assignment be paused effective immediately pending an investigation.

92.     He instructed Plaintiff to gather his personal belongings and leave the facility.

93.     Plaintiff's assignment and employment were thereafter terminated effective on or about February 24, 2025, and Plaintiff was never permitted to return to work.

**C.     *GM Investigated Plaintiff's Complaints, Took No Action, and Returned the Accused Harassers to Work***

94.     GM opened and controlled three internal investigations arising from Plaintiff's reports, each led by GM Employee Relations Investigator Michael Upson and/or GM Global Security and each resolved by GM alone: Case No. HRLR-340010 (Harassment: Sexual), opened January 23, 2025; Case No. HRLR-342866 (Harassment: Sexual), opened February 21, 2025; and Case No. INV-342965 (Threats & Violence), opened February 24, 2025. Although GM opened these investigations, it conducted them in a manner not reasonably calculated to end the harassment, and the harassment continued during and after each investigation.

95.     In the course of those investigations, GM confirmed facts corroborating Plaintiff's account, including that Plaintiff disclosed on December 9, 2024 that he had volunteered at an

LGBTQ+ community center; that Ralph Gallo admitted he had viewed Plaintiff's Facebook page; that Plaintiff, Herr, Staller, and Morin were seated together at the December 5, 2024 gathering; and that the work area was quiet enough that ordinary conversation could be overheard.

96. GM nonetheless closed each investigation as "unsubstantiated"—crediting the accused harassers' blanket denials over Plaintiff's contemporaneous, dated written reports—and took, in its own words, "No Action." GM did not discipline, remove, or separate any accused harasser; instead, as GM's records reflect, the accused coworkers were "returned to work." The only worker whose assignment GM ended was Plaintiff.

97. On February 19, 2025—days before Plaintiff's assignment was paused—GM managers Daniel Carter and Le'Ann Steele documented complaints by Herr and Staller that Plaintiff had been "staring them down" and speaking openly about "harassment," relayed those complaints to the staffing agencies, and, for the first time, raised questions about Plaintiff's job "performance." No performance deficiency had been documented before Plaintiff engaged in protected activity.

98. On information and belief, none of Herr, Austin, Daughtrey, Gallo, or Fennig was removed from the facility or terminated.

99. Similarly situated coworkers outside Plaintiff's protected classes, and who had not engaged in protected activity, were not harassed, were not threatened, and were not removed from the facility or discharged.

16

100. Throughout both placements, Plaintiff documented the harassment contemporaneously in writing, including in emails sent in real time, and preserved screenshots and correspondence.

101. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered lost wages and benefits, lost career and professional opportunities, and severe emotional distress, humiliation, embarrassment, anxiety, fear for his physical safety, mortification, and loss of enjoyment of life, and will continue to suffer such damages in the future.

**COUNT I Hostile Work Environment — Sexual Harassment (Sex and Sexual Orientation) in Violation of Title VII, 42 U.S.C. § 2000e-2 (Against GM, V2X, LanceSoft, and ICONMA)**

102. Plaintiff realleges and incorporates by reference each preceding paragraph as though fully set forth herein.

103. Plaintiff is a member of protected classes: he is a man, and he is bisexual. Discrimination because of sexual orientation is discrimination because of sex under Title VII. Bostock v. Clayton County, 590 U.S. 644 (2020).

104. During each placement, Plaintiff was subjected to unwelcome harassment because of his sex and sexual orientation, including demeaning and derogatory remarks about his sexual orientation and LGBT status—such as "I think James likes that," "I didn't see an adam's apple," "at least I'm not gay," and a coworker's statement that he had tried to "set [Plaintiff] up with a trans-woman"—together with mocking references to transgender persons, persistent intimidation, surveillance, and ostracism, and escalating threats of violence culminating in the First and Second Threats. The conduct formed a single, continuous course of harassment that began after Plaintiff's sexual orientation became known at each facility; remarks phrased in facially neutral terms,

including coworkers' repeated predictions that Plaintiff would be "fired" and their references to being "rid of him," were part of, and drew their meaning from, that same orientation-driven campaign.

105. The harassment was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and to create an abusive, hostile, and offensive working environment, and Plaintiff subjectively perceived it as such, including in that it interfered with his ability to perform his work and caused him to fear for his safety.

106. The entity Defendants, as Plaintiff's joint employers, employment agencies, and/or the entities controlling his worksite, knew or should have known of the harassment — through Plaintiff's complaints of October 7 and 12, 2024; his December 11, 2024 report to supervisor Jason Smith; his January 2025 written reports to ICONMA; GM's own Employee Relations investigation beginning January 29, 2025; and his February 21 and 24, 2025 written reports — and failed to take prompt and appropriate remedial action reasonably calculated to end the harassment.

107. To the extent the harassment was perpetrated or facilitated by supervisory personnel, or culminated in tangible employment actions including the October 14, 2024 and February 24, 2025 terminations of Plaintiff's assignments, the entity Defendants are vicariously liable, and no affirmative defense is available.

108. The entity Defendants acted with malice or with reckless indifference to Plaintiff's federally protected rights, in that they knew of the harassment and threats through Plaintiff's repeated written reports and their own investigations, yet took no corrective action against any harasser and instead ended only Plaintiff's assignment.

18

109. As a direct and proximate result, Plaintiff suffered and continues to suffer the damages described above.

WHEREFORE, Plaintiff requests judgment against Defendants GM, V2X, LanceSoft, and ICONMA, jointly and severally, in whatever amount he is found to be entitled, together with the relief set forth in the Prayer for Relief below.

**COUNT II Retaliation in Violation of Title VII, 42 U.S.C. § 2000e-3(a) (Against GM, V2X, LanceSoft, and ICONMA)**

110. Plaintiff realleges and incorporates by reference each preceding paragraph as though fully set forth herein.

111. Plaintiff engaged in protected activity, including: opposing harassment on or about October 7, 2024; complaining of sexual comments to management on October 12, 2024; reporting harassment to GM supervisor Jason Smith on December 11, 2024; reporting harassment in writing to ICONMA on January 24, 27, and 28, 2025; participating in GM's Employee Relations investigation on and after January 29, 2025; filing complaints with the MDCR, dual-filed with the EEOC; and reporting continuing harassment and threats of violence in writing on February 21 and 24, 2025.

112. Defendants took materially adverse actions against Plaintiff because of his protected activity, including: ceasing communication with him on October 12, 2024; terminating his contract and assignment on October 14, 2024; permitting and failing to remedy escalating harassment and threats after each report; and pausing and terminating his assignment on February 24, 2025, approximately five hours after his written report of the Second Threat to GM's Employee Relations investigator and Chief Executive Officer.

113. The close temporal proximity between Plaintiff's protected activity and the adverse actions — two days in October 2024, and approximately five hours in February 2025 — together

19

with coworkers' stated awareness of his MDCR complaint and statements such as "now you fucked up," establishes a causal connection between the protected activity and the adverse actions.

114.    Any reasons proffered by Defendants for the adverse actions are pretextual. With respect to the October 14, 2024 discharge, the Indiana Department of Workforce Development determined that no just cause was established.

115.    Defendants acted with malice or with reckless indifference to Plaintiff's federally protected rights.

116.    As a direct and proximate result, Plaintiff suffered and continues to suffer the damages described above.

WHEREFORE, Plaintiff requests judgment against Defendants GM, V2X, LanceSoft, and ICONMA, jointly and severally, in whatever amount he is found to be entitled, together with the relief set forth in the Prayer for Relief below.

**COUNT III Discriminatory Discharge and Terms and Conditions of Employment (Sex and Sexual Orientation) in Violation of Title VII, 42 U.S.C. § 2000e-2 (Against GM, V2X, LanceSoft, and ICONMA)**

117.    Plaintiff realleges and incorporates by reference each preceding paragraph as though fully set forth herein.

118.    Plaintiff was qualified for his positions and performed them satisfactorily.

119.    Defendants discriminated against Plaintiff with respect to the terms, conditions, and privileges of his employment, and discharged him from both placements, because of his sex and sexual orientation, while treating similarly situated employees outside his protected classes more favorably, including by retaining the employees who harassed him.

120.    Defendants' stated reasons, if any, for the differential treatment and discharges are pretext for unlawful discrimination.

20

121. Defendants acted with malice or with reckless indifference to Plaintiff's federally protected rights.

122. As a direct and proximate result, Plaintiff suffered and continues to suffer the damages described above.

WHEREFORE, Plaintiff requests judgment against Defendants GM, V2X, LanceSoft, and ICONMA, jointly and severally, in whatever amount he is found to be entitled, together with the relief set forth in the Prayer for Relief below.

**COUNT IV Hostile Work Environment — Sexual Harassment in Violation of ELCRA, MCL 37.2101 et seq. (Against GM, V2X, LanceSoft, and ICONMA)**

123. Plaintiff realleges and incorporates by reference each preceding paragraph as though fully set forth herein.

124. ELCRA prohibits discrimination in employment because of sex, which includes sexual harassment, and expressly prohibits discrimination because of sexual orientation and gender identity or expression. MCL 37.2103; MCL 37.2202(1)(a); see also Rouch World, LLC v Dep't of Civil Rights, 510 Mich 398 (2022).

125. As alleged above, Plaintiff was subjected to unwelcome communication and conduct of a sexual nature and to harassment because of his sex and sexual orientation, which had the purpose or effect of substantially interfering with his employment and of creating an intimidating, hostile, and offensive work environment.

126. The entity Defendants, through their agents and supervisory personnel, had actual and constructive notice of the harassment through Plaintiff's repeated reports and their own investigations—including GM's three internal investigations, Case Nos. HRLR-340010, HRLR-342866, and INV-342965—and failed to take prompt and adequate remedial action, instead closing each investigation without action and returning the accused harassers to work.

127.     As a direct and proximate result, Plaintiff suffered and continues to suffer the damages described above.

WHEREFORE, Plaintiff requests judgment against Defendants GM, V2X, LanceSoft, and ICONMA, jointly and severally, in whatever amount he is found to be entitled, together with the relief set forth in the Prayer for Relief below.

## COUNT V Discrimination in Violation of ELCRA, MCL 37.2202 and MCL 37.2203 (Against GM, V2X, LanceSoft, and ICONMA)

128.   Plaintiff realleges and incorporates by reference each preceding paragraph as though fully set forth herein.

129.   Defendants discharged Plaintiff and otherwise discriminated against him with respect to employment, compensation, and the terms, conditions, and privileges of employment because of his sex and sexual orientation, in violation of MCL 37.2202(1)(a).

130.   Defendants LanceSoft and ICONMA, as employment agencies, further failed and refused to refer or continue to refer Plaintiff for employment, and otherwise discriminated against him, because of his sex and sexual orientation, in violation of MCL 37.2203.

131.   As a direct and proximate result, Plaintiff suffered and continues to suffer the damages described above.

WHEREFORE, Plaintiff requests judgment against Defendants GM, V2X, LanceSoft, and ICONMA, jointly and severally, in whatever amount he is found to be entitled, together with the relief set forth in the Prayer for Relief below.

## COUNT VI: Retaliation in Violation of ELCRA, MCL 37.2701(a) (Against GM, V2X, LanceSoft, and ICONMA)

132.     Plaintiff realleges and incorporates by reference each preceding paragraph as though fully set forth herein.

133.     MCL 37.2701(a) makes it unlawful for a person to retaliate or discriminate against a person because the person has opposed a violation of ELCRA or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under ELCRA. "Person" includes individuals.

134.     Plaintiff opposed violations of ELCRA and filed charges and complaints, including with the MDCR, as alleged above.

135.     The entity Defendants retaliated against Plaintiff by, among other things, terminating his assignments on October 14, 2024 and February 24, 2025, within days — and, in February 2025, within hours — of his protected activity.

136.     As a direct and proximate result, Plaintiff suffered and continues to suffer the damages described above.

WHEREFORE, Plaintiff requests judgment against Defendants GM, V2X, LanceSoft, and ICONMA, jointly and severally, in whatever amount he is found to be entitled, together with the relief set forth in the Prayer for Relief below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and award the following relief:

a. A declaration that Defendants' acts and practices violated Title VII and ELCRA;

b. Back pay and the value of lost benefits, with prejudgment and post judgment interest;

c. Reinstatement to a comparable position or, in lieu thereof, front pay and front benefits;

d. Compensatory damages for emotional distress, humiliation, embarrassment, anxiety, fear for personal safety, mortification, damage to reputation, and loss of enjoyment of life, in whatever amount Plaintiff is found to be entitled;

e.  Exemplary damages as permitted under Michigan law;

f.  Punitive damages under 42 U.S.C. § 1981a against the entity Defendants for their malicious and recklessly indifferent conduct;

g.  Injunctive relief requiring Defendants to implement and enforce effective anti-harassment and anti-retaliation policies, training, and complaint procedures applicable to contingent and staffed workers at GM facilities;

h.  Reasonable attorney fees, expert fees, and costs under 42 U.S.C. § 2000e-5(k) and MCL 37.2802; and

i.  Such other and further relief as the Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all claims and issues so triable, pursuant to Fed. R. Civ. P. 38.

Dated: July 8, 2026.

/s/*Anna Kozak*
Anna Kozak, Esq.
Michigan Bar No.: P84465
**MORGAN & MORGAN, P.A**
150 W. Jefferson Ave, Suite 1400
Detroit, MI 48226
Telephone: (313) 739-1969
Fax: (313) 739-1994
anna.kozak@forthepeople.com
*Attorney for Plaintiff*

24